IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RONNIE ALEXANDER, | § | |
| _Plaintiff,_ | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:22CV00395-X |
| | § | |
| SOUTHERN HEALTH PARTNERS, INC; | § | _JURY DEMANDED_ |
| PHILIP R. TAFT, individually; | § | |
| PHILIP R. TAFT, PSY.D & | § | |
| ASSOCIATES PLLC; HENDERSON | § | |
| COUNTY, TEXAS; NATHANIEL | § | |
| PATTERSON; TAYLOR CALDWELL; | § | |
| MORGAN FAIN; NOAH KREIE; | § | |
| WILLIAM TRUSSELL; DORA | § | |
| MARTINEZ; and MELISSA HARMON, | § | |
| _Defendants._ | § | |

## HENDERSON COUNTY'S RULE 12(b)(6) MOTION TO DISMISS
## PLAINTIFF'S THIRD AMENDED COMPLAINT AND BRIEF IN SUPPORT

**ROBERT S. DAVIS**
State Bar No. 05544200
Lead Attorney
**ROBIN HILL O'DONOGHUE**
State Bar No. 09652220

**FLOWERS DAVIS, P.L.L.C.**
1021 ESE Loop 323, Suite 200
Tyler, Texas 75701
(903) 534-8063
(903) 534-1650 Facsimile

1200 Main St., Suite 208
Dallas, Texas 75202
(214) 205-6146

**ATTORNEYS FOR DEFENDANT,
HENDERSON COUNTY, TEXAS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>-iii-</u>

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>-1-</u>

II.     RULE 12(b)(6) STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>-2-</u>

III.    FACTS ALLEGED BY PLAINTIFF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>-4-</u>

IV.     ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>-6-</u>

        A.      Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>-6-</u>

                1.      Conditions of Confinement Theory . . . . . . . . . . . . . . . . . . . . . . . . <u>-7-</u>
                2.      Episodic Act or Omission Theory. . . . . . . . . . . . . . . . . . . . . . . . . . . <u>-8-</u>
                3.      Standard for Monell Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>-8-</u>

        B.      Plaintiff's Claims Against Henderson County . . . . . . . . . . . . . . . . . . . . . <u>-9-</u>

        C.      Episodic Act Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>-10-</u>

                1.      Episodic act burden. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>-10-</u>
                2.      Plaintiff cannot establish an episodic act claim against
                        Henderson County. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>-12-</u>

                        a.      No Individual Jailer Defendant was deliberately indifferent. . . <u>-12-</u>
                        b.      Plaintiff fails to allege action by a final policymaker. . . . . . . . <u>-13-</u>
                        c.      Plaintiff fails to allege a policy, custom, or practice. . . . . . . . . <u>-14-</u>

        D.      Conditions of confinement Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>-15-</u>

                1.      Conditions of confinement burden . . . . . . . . . . . . . . . . . . . . . . . . . <u>-16-</u>
                2.      Plaintiff cannot establish a conditions of confinement claim
                        against Henderson County. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>-17-</u>

V.      CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>-18-</u>

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>-19-</u>

**TABLE OF AUTHORITIES**

CASES:

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

 *Garza v. City of Donna*,
        922 F.3d 626 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

*Bagley v. Kolb*,
        No. 19-10, 2021 U.S. Dist. LEXIS 145460 (W.D. La. Aug. 3, 2021) . . . . . . . . . . . . -12-

*Belcher v. City of Foley, Ala.*,
        30 F.3d 1390 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

*Bell Atlantic Corp. v. Twombly*,
        550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

*Bell v. Wolfish*,
        441 U.S. 520 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-, -16-, -17-

*Bennett v. City of Slidell*,
        728 F.2d 762 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-, -14-

*Bennett v. City of Slidell*,
        735 F.2d 861 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

*Blackburn v. City of Marshall*,
        42 F.3d 925 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

*Brown v. Wichita County, Tex.*,
        No. 7:05-CV-108-O, 2011 WL 1562567 (N.D. Tex. Apr. 26, 2011) . . . . . . . . . . . . . -14-

*Bryan County v. Brown*,
        520 U.S. 397 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

*City of Los Angeles v. Heller*,
        475 U.S. 796 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

*City of St. Louis v. Praprotnik*,
        485 U.S. 112 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

*Converse v. City of Kemah*,
    961 F.3d 771 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

*Crocco v. Van Winkler*,
    __ F.Supp. __, No. 19-cv-882, 2023 WL 2349593 (D. N.H. Mar. 3, 2023) . . . . . . . . -17-

*Culbertson v. Lykos*,
    790 F.3d 608 (5th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-, -14-

*Domino v. Tex. Dep't of Crim. Justice*,
    239 F.3d 752 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

*Edmiston v. Borrego*,
    __ F.4th __, No. 22-50102, 2023 WL 4877467 (5th Cir. Aug. 1, 2023) . . . . . . . -11-, -13-

*Estate of Henson v. Wichita Cty., Tex.*,
    795 F.3d 456 (5th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-, -8-

*Estate of Pollard v. Hood County*,
    579 F. App'x 260 (5th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

*Farmer v. Brennan*,
    511 U.S. 825 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-, -11-

*Flores v. County of Hardeman*,
    237 F.3d 567 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

*Flores v. County of Hardeman, Tex.*,
    124 F.3d 736 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

*Gentilello v. Rege*,
    623 F.3d 540 (5th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

*Greene v. Greenwood Pub. Sch. Dist.*,
    463 F.3d 339 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

*Gonzalez v. Ysleta Indep. Sch. Dist.*,
    996 F.2d 745 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

*Greene v. Greenwood Pub. Sch. Dist.*,
    890 F.3d 240 (5th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

*Hare v. City of Corinth*,
　　74 F.3d 633 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-, -8-

*Hyatt v. Thomas*,
　　843 F.3d 172 (5th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

*In re Katrina Canal Breaches Litig.*,
　　495 F.3d 191 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

*Jacobs v. West Feliciana Sheriff's Dept.*,
　　228 F.3d 388 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

*James v. Harris County*,
　　577 F.3d 612 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*,
　　379 F.3d 293 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

*Keane v. Fox TV Stations, Inc.*,
　　297 F.Supp. 2d 921 (S.D. Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*,
　　369 F.3d 464 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

*Monell v. Department of Social Serv.*,
　　436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-, -9-, -14-

*Morin v. Caire*,
　　77 F.3d 116 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

*Papasan v. Allain*,
　　478 U.S. 265 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

*Pell v. Procunier*,
　　417 U.S. 817 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

*Pembaur v. City of Cincinnati*,
　　475 U.S. 469 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

*Peterson v. City of Fort Worth*,
　　588 F.3d 838 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

*Piotrowski v. City of Houston*,
    237 F.3d 567 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [-12-](#)

*Plotkin v. IP Axess, Inc.*,
    407 F.3d 690 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [-3-](#)

*Rhyne v. Henderson County*,
    973 F.2d 386 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [-17-](#)

*Rivera v. Houston Indep. Sch. Dist.*,
    349 F.3d 244 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [-11-](#)

*Scott v. Moore*,
    114 F.3d 51 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [-7-](#), [-8-](#), [-10-](#), [-11-](#)

*Self v. City of Mansfield*,
    369 F. Supp. 3d 684 (N.D. Tex. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [-13-](#)

*Shepherd v. Dallas Cty.*,
    591 F.3d 445 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [-7-](#), [-8-](#)

*Taylor v. Wausau Underwriters Ins. Co.*,
    423 F.Supp. 882 (E.D. Wis. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [-18-](#)

*Turner v. Upton Cnty.*,
    915 F.2d 133 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [-11-](#)

*Webster v. City of Houston*,
    735 F.2d 838 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [-14-](#)

*Wilson v. Birnberg*,
    667 F.3d 591 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [-3-](#)

**RULES:**

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [-1-](#), [-2-](#)

**STATUTES:**

26 Tex. Admin. Code § 301.303(48) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [-6-](#)

37 Tex. Admin. Code § 273.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

Tex. Local Gov't Code Ann. § 351.041(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

COMES NOW, Defendant Henderson County ("Defendant"), and respectfully moves to dismiss Plaintiff's claims against it in Plaintiff's Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.
## INTRODUCTION

This case concerns Plaintiff's time on suicide watch over five days in the Henderson County Jail which Plaintiff alleges caused him mental and physical suffering. This case was originally filed by Plaintiff on February 17, 2022. *See* Doc. 1. The original complaint included claims against just two Henderson County jailers, Jacob Parras and Tori Taylor, and contracted health care providers for the Henderson County Jail. Thereafter, Plaintiff amended his complaint twice, and discovery took place. *See* Docs. 25, 62. Specifically, Plaintiff deposed Parras, Taylor, Jessica Phlips, Philip Taft and Linda Lacey. *See* Doc. 62, ¶¶ 49, 66, 86. The parties also exchanged disclosures, and Plaintiff issued a subpoena to Henderson County for documents. *See* Docs. 35-37, 49, 56, 58-59. In Plaintiff's Second Amended Complaint, he omitted jailers Parras and Taylor and added jailers Nathaniel Patterson, Taylor Caldwell, Morgan Fain, Noah Kreie, William Trussell, Dora Martinez, Jordan Jackson and Melissa Harmon ("Individual Jailer Defendants"). *See* Doc. 62. Plaintiff also initiated a claim against Henderson County. *Id.*

In response to Plaintiff's Second Amended Complaint, Henderson County and the other defendants filed motions to dismiss for failure to state a claim. *See* Docs. 69, 74, 75, 80. On June 12, 2023, this Court granted Henderson County's motion to dismiss in addition to the motions to dismiss filed by the other defendants. Doc. 112. Plaintiff's claims were dismissed without prejudice to filing an amended complaint within 28 days making "only the changes specified" by the Court. *Id.* at p.

-1-

21. As it relates to Henderson County, the order specified that Plaintiff could amend his complaint to add the size of the County, the number of people potentially subject to the alleged misconduct, the number of inmates over the last four years, and the number of inmates who spent time in the violent cell. *Id.* at 13. The Court reasoned that without this information, the Court could not determine whether the incidents mentioned in the complaint were sufficiently numerous to attribute constructive knowledge to the policymaker. *Id.* Plaintiff was allowed to allege this specific information in a Third Amended Complaint. *Id.* at 14.

Plaintiff's Third Amended Complaint does not include this information. Instead, Plaintiff adds new allegations against the County including a conditions of confinement claim regarding the layout of the violent cell. *See* Doc. 114, ¶ 6. These additions were not allowed under the Court's previous order. However, even assuming these amendments were allowed, Plaintiff again has failed to state a claim against Henderson County. Accordingly, the County files this motion to dismiss.

## II.
## RULE 12(b)(6) STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims stated in the complaint. *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). In considering a Rule 12(b)(6) motion, the court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2005). The court, however, need not accept as true "conclusory allegations, unwarranted factual inferences, or legal

-2-

conclusions." *Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 696 (5th Cir. 2005); accord *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009).  Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007); accord *Wilson v. Birnberg,* 667 F.3d 591,595 (5th Cir. 2012).  A claim is facially plausible "'when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).  The standard of plausibility "is not akin to a probability requirement, but asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678-79.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Iqbal*, 556 U.S. at 678. The court should dismiss a complaint if it lacks an allegation regarding one of the required elements of a cause of action. *See Keane v. Fox TV Stations, Inc.*, 297 F.Supp. 2d 921, 925 (S.D. Tex. 2004) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)).

A court should begin its analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth. *Iqbal,* 556 U.S. at 679. A court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Gentilello v. Rege*, 623 F.3d 540, 544 (5th Cir. 2010). The court need only accept as true the "well-pleaded" facts in a plaintiff's complaint. *Papasan*, 478 U.S. at 283; *Greene v. Greenwood Pub. Sch. Dist.*, 890 F.3d 240, 242 (5th Cir. 2018). To be "well pleaded," a complaint must state specific facts to support the claim, not merely conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679.

**III.**
**FACTS ALLEGED BY PLAINTIFF**

Setting aside the conclusory allegations in the complaint, the relevant allegations are as follows:[1]

•    Plaintiff was arrested and booked into the Henderson County Jail on March 8, 2021. Doc. 114, ¶ 16.

•    A medical intake screening was performed by a nurse who placed him on an alcohol withdrawal protocol based on his history. *Id.* at ¶ 18.

•    Plaintiff was initially placed in a holding cell where he was twice evaluated by a mental health worker, Jessica Phlips, for clearance on March 8, 2021 and March 9, 2021. *Id.* at ¶¶ 20, 21, 22.

•    Phlips is not a licensed doctor or clinician. *Id.* at ¶¶ 102.

•    Plaintiff was classified as a maximum security and housed with similarly classified inmates. *Id.* at ¶ 23.

•    Plaintiff deceptively told Jailer Jakob Parras he was suicidal in order to be moved out of his cell. *Id.* at ¶ 25.

---

[1] These factual allegations are taken from Plaintiff's complaint and because this is a Rule 12(b)(6) motion to dismiss, the Court must accept as true only the *well-pleaded* facts.

-4-

- Plaintiff was then transferred to the "violent cell" for suicide watch. The "violent cell" has nothing in it that a suicidal inmate can use to harm himself.[2] [3] *Id.* at ¶¶ 27, 28, 155.

- The "violent cell" is a one person cell with an in-floor toilet, but no sink or shower or bedding other than a blanket. *Id.* at ¶¶ 6, 28.

- The "violent cell" has an elevated built-in slab for sleeping. *Id.* at pp. 2, 7, 8.

- Unidentified guards allegedly verbally insulted and threatened Plaintiff. *Id.* at ¶¶27, 35.

- Toilet paper was not provided by guards. *Id.* at ¶ 28.

- Plaintiff was provided a suicide blanket to cover himself while on suicide watch. *Id.* at ¶ 30.

- The lights were left on in the suicide cell. *Id.* at ¶ 31.

- Plaintiff was provided three meals a day with eight ounces of beverage at every meal. *Id.* at ¶ 32.

- Plaintiff was provided extra water occasionally. *Id.* at ¶ 53, 92.

- Plaintiff was never given the opportunity to shower and use a different toilet (apart from the in-floor toilet), and never showered during the five days he was on suicide watch. *Id.* at 33.

- Plaintiff was in this cell on suicide watch for approximately five days. *Id.*

---

[2] Pursuant to Federal Rule of Evidence 201, Defendant respectfully requests that the Court take judicial notice that the Texas Commission on Jail Standards inspects the Henderson County Jail, including the violent cell, at least every two years to ensure compliance with the Texas Minimum Jail Standards per Chapter 297 of Title 37 of the Texas Administrative Code.

[3] Despite allegations that the floor was covered in urine and fecal matter, the images included in Plaintiff's complaint do not support that allegation. Doc. 114, pp. 4, 9.

- Plaintiff was assessed by Phlips on March 12, 2021, but Plaintiff was too confused to answer her questions, so he remained on suicide watch. *Id.* at ¶¶ 97, 99.[4] [5]

- The Henderson County Jail's written policy states that staff members shall adhere to all medical or mental health officials' instructions and recommendations relating to the supervision of potentially suicidal inmates. *Id.* at ¶ 198.

## IV.
## ARGUMENT AND AUTHORITIES

### A.    Applicable Law

A pretrial detainee may bring a Fourth Amendment challenge against a governmental entity under two alternative theories: first, that a defendant committed an "episodic act or omission," or second, that a general "condition of confinement" violated the detainee's constitutional rights. *See Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 462 (5th Cir. 2015). The legal standard used to measure the due process rights of pretrial detainees depends on whether the detainee challenges

---

[4] Plaintiff argues throughout the complaint that Phlips was not "qualified" to perform her duties at the jail. However, all that is required by the Texas Jail Commission is that the jail "provide the inmate access to, at a minimum, a qualified mental health professional (as defined by 25 TAC, § 412.303(48)) within a reasonable time." 37 Tex. Admin. Code § 273.2. Section 412.303 was transferred to 26 Tex. Admin. Code § 301.303 by 45 TexReg 1237, effective March 15, 2020. Subsection 48 requires that a qualified mental health professional have demonstrated a documented competency in the work to be performed and: (A) has a bachelor's degree from an accredited college or university with a minimum number of hours that is equivalent to a major (as determined by the LMHA or MCO in accordance with §412.316(d) of this title (relating to Competency and Credentialing)) in psychology, social work, medicine, nursing, rehabilitation, counseling, sociology, human growth and development, physician assistant, gerontology, special education, educational psychology, early childhood education, or early childhood intervention; (B) is a registered nurse (RN); **or** (C) completes an alternative credentialing process as determined by the LMHA and MCO in accordance with § 412.316(c) and (d) of this title relating to (Competency and Credentialing). 26 Tex. Admin. Code § 301.303(48). There is no allegation in Plaintiff's complaint that Phlips is not qualified under this relevant definition.

[5] Plaintiff also cites to various National Commission on Correctional Health Care standards throughout his complaint to suggest that Defendants are bound by these standards. These standards are not applicable in the State of Texas. The only standards that apply to jails in the State of Texas are the United States Constitution, Texas Constitution, and Texas Jail Standard Commission. Reliance on a third party entity, such as NCCHC, that does not have control over Texas jails is misplaced. More importantly, any failure to abide by these national standards, or even state standards, does not demonstrate constitutional violations or deliberate indifference. *See Tweedy v. Boggs*, 983 F.2d 232 (5th Cir. 1993) (stating a violation of the Texas Jail Standards does not itself amount to a constitutional deprivation).

the constitutionality of a condition of his confinement or whether he challenges an episodic act or omission of an individual state actor. *Hare v. City of Corinth*, 74 F.3d 633, 644-45 (5th Cir. 1996).

A case is properly categorized as an episodic act or omission where the plaintiff faults specific jail officials for their actions or omissions and then points derivatively to a municipal policy or custom that caused those actions. *See Shepherd v. Dallas Cty.*, 591 F.3d 445, 452 (5th Cir. 2009). Plaintiff's Second Amended Complaint proceeded on an episodic act or omission claim, faulting the jail staff and medical staff for their actions and suggesting that other similar instances created a County policy. *See* Doc. 62, ¶¶ 162, 163. Now, although not explicitly stated, Plaintiff's Third Amended Complaint attempts to assert both a conditions of confinement claim, regarding the "conditions inherent to the violent cell," and an episodic act claim based on the conduct of the individual defendants. Doc. 114, ¶ 6. This new conditions of confinement claim goes well beyond what this Court allowed the Plaintiff to add, and should be struck from the Plaintiff's Third Amended Complaint. However, in the event the Court chooses to allow this new claim, the County will address both theories.

### 1.      Conditions of Confinement Theory

For a conditions of confinement claim, "the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). If "the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective," it is assumed that "by the municipality's very promulgation and maintenance of the complained-of condition, that it intended to cause the alleged constitutional deprivation." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc). To prevail on a claim of unconstitutional conditions of confinement,

a plaintiff must show an identifiable intended condition which is not reasonably related to a legitimate governmental objective. *See id*.

### 2. Episodic Act or Omission Theory

An episodic act or omission claim, by contrast, "faults specific jail officials for their acts or omissions." *Shepherd*, 591 F.3d at 452. In such a case, an actor is "interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Scott*, 114 F.3d at 53. "The relevant question becomes 'whether that official breached his constitutional duty to tend to the basic needs of persons in his charge,' and intentionality is no longer presumed." *Estate of Henson*, 795 F.3d at 464 (quoting *Hare*, 74 F.3d at 645). "A jail official violates a pretrial detainee's constitutional right to be secure in his basic human needs only when the official had 'subjective knowledge of a substantial risk of serious harm' to the detainee and responded to that risk with deliberate indifference." *Id.* (quoting *Hare*, 74 F.3d at 650). The official must know of and disregard an excessive risk to inmate health or safety. *Id.* [T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

### 3. Standard for Monell Liability

The United States Supreme Court has expressly rejected any governmental liability based on *respondeat superior*. *Monell v. Department of Social Serv.*, 436 U.S. 658, 694 (1978). Under section 1983, a local governmental entity is not liable for the torts of its officials and employees "unless deliberate action attributable to the [entity] itself is the 'moving force' behind the plaintiff's

deprivation of federal rights." *Bryan County v. Brown*, 520 U.S. 397, 400 (1997); *Monell*, 436 U.S. at 691.  It is only where the "execution of the government's policy or custom . . . inflicts the injury" that the entity may be held liable under section 1983. *Bryan County*, 520 U.S. at 417; *Monell*, 436 U.S. at 694.   A plaintiff must show government action was taken with the requisite degree of culpability and must establish a "direct causal link" between the county's actions and the alleged constitutional deprivation. *Bryan County*, 520 U.S. at 404. "This connection must be more than a mere 'but for' coupling between cause and effect." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 310 (5th Cir. 2004). Mere negligence is not sufficient for section 1983 liability. *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 759 (5th Cir. 1993).

Therefore, to prevail on a claim for county liability under section 1983, a plaintiff must establish: (1) a policymaker; (2) the existence of a county policy or custom that was executed with deliberate indifference to the plaintiff's clearly established constitutional rights; and (3) the existence of a direct causal link between the county's policy or custom and the deprivation of that plaintiff's constitutional rights. *Monell,* 436 U.S. at 694; *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009).

**B.     Plaintiff's Claims Against Henderson County**

As noted above, Plaintiff's Third Amended Complaint contains allegations and claims that exceed this Court's previous Order restricting the content of a future amended complaint. The previous complaint only contained an episodic act or omission claim, but the current complaint presumably adds a conditions of confinement claim.

Plaintiff currently seeks to hold Henderson County liable based on a practice/policy of subjecting inmates confined to the violent cell to cruel and unusual punishment by the jail staff

which Plaintiff claims was the moving force behind his alleged damages. *See* Doc. 114, p. 45-46. Plaintiff also seeks to hold Henderson County liable based on the practices of Dr. Taft, its independent contractor for mental healthcare services in the Jail. *Id.* Finally, Plaintiff added a conditions of confinement claim asserting that the "conditions inherent to the violent cell" violated his constitutional rights. Plaintiff's new conditions of confinement claim should be stricken. However, in the event the Court considers this new claim, Defendant will demonstrate that Plaintiff fails to state a claim under this theory as well as the others.

**C.    Episodic Act Claim**

**1.    Episodic act burden**

To prevail on an episodic act claim for county liability under section 1983, a plaintiff must show: (1) a county employee violated his clearly established constitutional rights with subjective deliberate indifference; (2) the violation resulted from a county policy or custom adopted or maintained with objective deliberate indifference; and (3) a direct causal link between the county's policy or custom and the deprivation of that plaintiff's constitutional rights. *See Scott*, 114 F.3d at 54; *Flores v. County of Hardeman*, 237 F.3d 567, 580 (5th Cir. 1997).

Subjective deliberate indifference is an extremely high standard which requires a plaintiff to establish more than mere negligence or an unreasonable response. *Estate of Pollard v. Hood County*, 579 F. App'x 260, 265 (5th Cir. 2014) (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Accordingly, an "official will not be held liable if he merely 'should have known' of a risk." *Converse v. City of Kemah*, 961 F.3d 771, 774 (5th Cir. 2020). Rather, to satisfy this high standard, a plaintiff "must plausibly allege both that the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]' and that he 'also [drew] the

-10-

inference." *Edmiston v. Borrego*, __ F.4th __, No. 22-50102, 2023 WL 4877467, *at 5 (5th Cir. Aug. 1, 2023) (quoting *Farmer*, 511 U.S. at 837). The official's conduct must demonstrate subjective awareness of a substantial risk of serious harm and a failure to take reasonable measures to abate this risk. *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Also, to impose liability on a municipal defendant for the constitutional violation, the pretrial detainee must show that the employee's acts resulted from a municipal policy of custom adopted or maintained with objective deliberate indifference to the detainee's constitutional rights. *Scott*, 114 F.3d at 54. An official policy can only be made by an official policymaker. A county can be responsible for actions of a final policymaker who has "the responsibility for making law or setting policy in any given area of a local government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988). Exercising discretion in an area of government is not enough. *Culbertson v. Lykos*, 790 F.3d 608, 624 (5th Cir. 2015). The official must be the one responsible for setting controlling policy:

> The fact that a particular official–even a policymaking official–has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986) (citation and footnote omitted). The question of whether a particular official has final policymaking authority is a question of state law. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). Under Texas law, the sheriff is the final policymaker with respect to the county jail. *See Turner v. Upton Cnty.*, 915 F.2d 133, 136 (5th Cir. 1990); Tex. Local Gov't Code Ann. § 351.041(b).

-11-

An official policy is "a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). An official policy can also be:

> A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Id.* A county is not liable for such persistent conduct unless the conduct is attributable to the county's governing body or official policymaker. *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984).

Finally, plaintiffs must allege plausible facts to show "a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001). Without this high threshold of proof, 'municipal liability collapses into *respondeat superior* liability.'" *Bagley v. Kolb*, No. 19-10, 2021 U.S. Dist. LEXIS 145460, at *40 (W.D. La. Aug. 3, 2021) (citing *Piotrowski*, 237 F.3d at 580) (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998)).

### 2. Plaintiff cannot establish an episodic act claim against Henderson County.

#### a. No Individual Jailer Defendant was deliberately indifferent.

Plaintiff has failed to allege facts sufficient to establish an extreme deprivation of minimum measures of life's necessities. Plaintiff has also failed to allege sufficient facts to establish that any of the Individual Jailer Defendants were aware of facts from which an inference of substantial risk

-12-

of serious harm to Plaintiff could be drawn, and Plaintiff has failed to allege that the Individual Jailer Defendants actually drew such an inference. Additionally, Plaintiff has failed to allege that the actions of any of the Individual Jailer Defendants was unreasonable in light of known circumstances.

Only one sentence in Plaintiff's 52-page Complaint references the alleged knowledge of the Individual Jailer Defendants. In Paragraph 221, Plaintiff alleges "Each of the CO Defendants was well aware of the serious danger they were placing Alexander in when they intentionally subjected him to such treatment..." Doc. 114, ¶ 221.  However, this allegation is conclusory and constitutes a naked assertion devoid of further factual enhancement regarding their actual knowledge. *See Edmiston*, 2023 WL 4877467, *at 8 (holding allegations that deputy was "well aware" that inmate was not in right mind, was mentally ill, and a danger to himself and/or others were naked assertions that did not plausibly allege the requisite subjective knowledge). The County is entitled to dismissal of Plaintiff's episodic act claim because Plaintiff has failed to allege extreme deprivations and none of the Individual Jailer Defendants acted with deliberate indifference toward Plaintiff. A governmental entity cannot be held liable when the underlying employees do not commit a constitutional violation. *Self v. City of Mansfield*, 369 F. Supp. 3d 684, 702 (N.D. Tex. 2019) (Fish, J.); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Thus, the complaint against the County based on the conduct of the jailers  is inadequate to meet Plaintiff's burden with respect to Henderson County.

b.     **Plaintiff fails to allege action by a final policymaker**.

Plaintiff's complaint contains no allegations regarding an unconstitutional policy implemented by a policymaker for Henderson County or Henderson County Sheriff Hillhouse. Nor has Plaintiff alleged  any awareness by Sheriff Hillhouse of the complaints raised by the Plaintiff.

Plaintiff also alleges that Defendant Philip Taft, Psy. D., the Jail's contracted mental health care provider, is the policymaker for Henderson County. As a matter of law, this argument fails. Dr. Taft's discretionary decisions regarding medical care for the jail does not rise to the level of policymaking authority. *See Bennett,* 728 F.2d at 669-70 (holding city building inspector and city attorney not policymakers despite showing of discretion and decision making authority on their part); *Brown v. Wichita County, Tex.*, No. 7:05-CV-108-O, 2011 WL 1562567, at *8 (N.D. Tex. Apr. 26, 2011) (holding contracting jail physician not a policymaker for the county). Furthermore, the County cannot be liable for any actions alleged against Dr. Taft or Taft PLLC because section 1983 does not create *respondeat superior* liability. *Monell*, 436 U.S. at 694.

Therefore, with no allegation that a Henderson County policymaker implemented an unconstitutional policy, Plaintiff cannot establish liability against Henderson County.

### c.    Plaintiff fails to allege a policy, custom, or practice.

There is no allegation that Henderson County has an unconstitutional written policy in contravention of the Fourteenth Amendment.  Therefore, to hold Henderson County liable, Plaintiff must  show a "persistent, widespread practice" that is "so common and well settled as to constitute a custom that fairly represents [county] policy." *Culbertson*, 790 F.3d at 628 (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).  To support his claim of a policy of cruel and unusual punishment of inmates in the violent cell, Plaintiff relies on selective reports by eight former inmates at the Henderson County Jail who were placed in the violent cell in an attempt to show a widespread practice that Sheriff Hillhouse must have known about at the time of Plaintiff's incarceration. However, at least four of these reports occurred <u>after </u>Plaintiff was an inmate.  So these four incidents should not be considered in determining objective deliberate indifference. The remaining four reports

occurred prior to Plaintiff's incarceration and spanned from 2017 to 2021.  Fifth Circuit precedent requires allegations of a "persistent, widespread practice" of the alleged constitutional violation before Henderson County may be held liable in this case.  For example, in the case of *Peterson v. City of Fort Worth*, 588 F.3d 838, 842 (5th Cir. 2009), the plaintiff brought a section 1983 action based on excessive force against a city arguing there was a widespread practice of excessive force that established a *de facto* policy of the city. *Id.* at 850. The plaintiff claimed there were 27 prior incidents of excessive force over the course of three years. *Id.* The Fifth Circuit held the prior incidents insufficient noting that a pattern requires "sufficiently numerous prior incidents as opposed to isolated instances." *Id.*

Plaintiff has failed to allege a pattern of sufficiently numerous prior incidents of Fourth Amendment violations to constitute a policy, custom or practice or to draw a reasonable inference that the practice was so widespread that Sheriff Hillhouse had actual or constructive knowledge of such policy. The two inmate grievances submitted prior to Plaintiff's incarceration were addressed by the Jail Captain, and there is no allegation that they were appealed to the Sheriff. *See* Doc. 114, ¶¶ 181, 183. According to the relevant alleged facts and Fifth Circuit precedent, Plaintiff fails to state a claim with respect to the existence of a County policy, custom or practice.

Furthermore, despite being given the opportunity to amend his complaint to include information necessary for the Court to determine whether constructive knowledge could be attributed to relevant policymaker, Plaintiff failed to provide this information in his Third Amended Complaint. As such, Plaintiff has failed to plausibly show Henderson County implemented an official policy of constitutional violations in the violent cell.

**D.**     **Conditions of confinement Claim**

As stated above, Defendant Henderson County objects to the addition of this new claim in Plaintiff's Third Amended Complaint and requests that it be stricken. However, in the event the Court considers it, the County will demonstrate how Plaintiff's allegations fail to state a conditions of confinement claim.

**1.      Conditions of confinement burden**

To assess a conditions of confinement claim, courts apply the test established by the Supreme Court in *Bell v. Wolfish*. In *Bell*, the Supreme Court explained that "the Government ... may detain [a pretrial detainee] to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell*, 441 U.S. at 536-37. This balance accommodates the government's "substantial interest in ensuring that persons accused of crimes are available for trials," while respecting a pretrial detainee's constitutional "right to be free from punishment." *Id.* at 534. The Court emphasized that "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Id.* at 537. Instead, the Court held that:

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Id.* at 539. The Court held that "the effective management of the detention facility ... is a valid objective that may justify the imposition of conditions and restrictions of pretrial detention." *Id.* at 540. The Court emphasized that in determining "whether restrictions or conditions are reasonably

-16-

related to Government's interest in ... operating the institution in a manageable fashion," courts must remember that "[s]uch considerations are peculiarly within the province and professional expertise of correction officials." *Id.* at 540 n. 23 (quoting *Pell v. Procunier*, 417 U.S. 817, 827 (1974)). The Court recognized the wide-ranging deference given to prison administrators to maintain institutional security and warned courts against becoming "enmeshed in the minutiae of prison operations." *Id.* at 562.

### 2.    Plaintiff cannot establish a conditions of confinement claim against Henderson County.

Plaintiff's conditions of confinement claim concerns the "conditions inherent to the violent cell" such as 24-hour lighting, lack of bedding other than a blanket, no sink or shower, and the use of a floor toilet versus a regular toilet. *See* Doc. 114, ¶¶ 6, 28. Plaintiff claims there is no purpose for these conditions for an inmate on suicide watch.

The Fourteenth Amendment requires jails to protect inmates from known suicidal tendencies. *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019). Therefore, jails are required to take suicidal precautions when an inmate states he is suicidal. *See Hyatt v. Thomas*, 843 F.3d 172, 177-78 (5th Cir. 2016). Generally, a suicidal  inmate is placed in a cell without any objects they can use to take their life if such a cell is available. Additionally, the inmate is viewed at regular intervals to make sure they are still alive. *See generally Rhyne v. Henderson County*, 973 F.2d 386, 393 (5th Cir. 1992). Suicides may be accomplished using a variety of objects in a jail cell. Specifically, there are cases of attempted suicides using a jail cell's toilet, sink, shower and bedding. *See Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1393 (11th Cir. 1994) (inmate attempted to drown himself in the cell's toilet); *Crocco v. Van Winkler*, __ F.Supp. __, No. 19-cv-882, 2023 WL 2349593, *at 2 (D. N.H.

Mar. 3, 2023) (inmate attempted to drown himself in the cell's sink); *Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 737 (5th Cir. 1997) (inmate hanged himself in cell by tying blanket to shower rod)*; Jacobs v. West Feliciana Sheriff's Dept.*, 228 F.3d 388, 39-91 (5th Cir. 2000) (inmate used sheet to kill herself). Jail suicides have also occurred when inmates have been allowed to turn off their lights in a suicide cell. *See Taylor v. Wausau Underwriters Ins. Co.*, 423 F.Supp. 882, 886 (E.D. Wis. 2006). Given the duty to protect inmates in their custody who are suicidal, a county jail's use of a cell such as the one occupied by Plaintiff certainly serves a legitimate governmental objective. These cells have 24-lighting, no sink, no shower, and no above ground toilet. These suicide precautions ensure the safety of suicidal inmates. The layout of the suicide cell is not arbitrary and serves a valid government purpose. Therefore, these safety precautions do not constitute punishment, and Plaintiff's conditions of confinement allegations fail to state a claim.

## V.
## CONCLUSION

For the above stated reasons, Henderson County respectfully prays that this Court grant its motion to dismiss in response to Plaintiff's Third Amended Complaint and dismiss all claims against it with prejudice.

Respectfully submitted,

**FLOWERS DAVIS, P.L.L.C.**
1021 ESE Loop 323, Suite 200
Tyler, Texas 75701
(903) 534-8063
(903) 534-1650 Facsimile

1200 Main St., Suite 208
Dallas, Texas 75202
(214) 205-6146

**ROBERT S. DAVIS**
State Bar No. 05544200
rsd@flowersdavis.com
Lead Attorney

**ROBIN HILL O'DONOGHUE**
State Bar No. 09652220
rho@flowersdavis.com

**ATTORNEYS FOR DEFENDANT,
HENDERSON COUNTY, TEXAS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing instrument was served upon all counsel of record in the above entitled and numbered cause on August 7, 2023, in the following manner:

  X     Via ECF

**ROBIN HILL O'DONOGHUE**

-19-