UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RONNIE ALEXANDER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-0395-X |
| | § | |
| SOUTHERN HEALTH PARTNERS, | § | |
| INC., et al., | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART MOTIONS TO DISMISS**

Pending before the Court are four motions to dismiss: Defendant Southern
Health Partners Inc.'s ("SHP") motion to dismiss, Defendants Philip R. Taft, Psy. D.
& Associates PLLC and Philip Taft's ("Taft Defendants") motion to dismiss,
Henderson County's motion to dismiss, and correctional officers Nathaniel Patterson,
Taylor Caldwell, Morgan Fain, Noah Kreie, William Trussell, Dora Martinez, and
Melissa Harmon's ("Officers") motion to dismiss.  (Docs. 122–125).  After reviewing
the motions, responses, replies, and applicable law, the Court **GRANTS IN PART
AND DENIES IN PART** Defendants' motions and **DISMISSES** all claims in this
action.  Plaintiff Ronnie Alexander's Section 1983 claims against the Taft Defendants,
Henderson County, and the Officers are **DISMISSED WITH PREJUDICE** for
failure to state a claim, and Alexander's state-law, medical-negligence claims against
the Taft Defendants and SHP are **DISMISSED WITHOUT PREJUDICE** for lack

of subject-matter jurisdiction.  This is a final judgment dismissing all parties and claims.  The Clerk of the Court is **INSTRUCTED** to close this case.

## I. Background

This case relates to a prison's conditions of confinement.  Police arrested Ronnie Alexander for an unknown crime that is not at issue in this case.  After his arrest, Alexander spent two "uneventful" days in Henderson County Jail's holding cell. After those two days, prison officials transferred Alexander to a group pod where "his new podmates repeatedly threatened him."[1]  Because of this, he wanted out. So he asked the prison guards to move him. They didn't. Still wanting out, Alexander hatched a plan to lie to the prison official that he was suicidal to get out of his group pod.

Well . . . it worked.  Alexander cried out to prison officials that he was suicidal. Accordingly, he was then transferred from his group pod to a suicide-prevention cell known in the Henderson County Jail as the "violent cell."

For the purpose of preventing suicides, the violent cell is barren.  There is no toilet.  There is no toilet paper.  There is no bedding apart from a suicide blanket. The lights remain on throughout the day.  And detainees in the violent cell are not allowed outside of their cells.  Alexander was subjected to those conditions for five days.

---

[1] Doc. 114 at 3 (Third Amended Compl.).

Alexander now sues in this Court under federal and state law for injuries sustained while in the violent cell for five days.[2]  To this end, Alexander is suing Southern Health Providers (medical provider at the jail); Philip R. Taft Psy. D. & Associates PLLC (medical provider at the jail); Philip R. Taft (owner of Taft & Associates PLLC), Henderson County (the county in charge of the jail); and correctional officers Nathaniel Patterson, Taylor Caldwell, Morgan Fain, Noah Kreie, William Trussell, Dora Martinez, and Melissa Harmon.

Previously, the Court dismissed all claims in Alexander's second amended complaint but allowed Alexander to replead those claims.[3]  He did.  Defendants have now moved to dismiss claims brought in Alexander's third amended complaint.[4]  And they've succeeded.

## II. Legal Standard

Federal Rule of Civil Procedure 8 requires a pleading to state "a short and plain statement of the claim showing that the pleader is entitled to relief."[5]  The pleading standard does not require detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[6]  For a complaint to survive a motion to dismiss under Rule 12(b)(6), it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is

---

[2] *Id.* at 45–52.

[3] Doc. 112 (order granting motions to dismiss).

[4] Docs. 122–125.

[5] FED. R. CIV. P. 8(a)(2).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

plausible on its face."[7]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8]  For purposes of a motion to dismiss, courts must accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff.[9]  "In other words, a motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts."[10]

### III. Analysis

Alexander's repleaded complaint includes two causes of action, Section 1983 claims and state-law medical-negligence claims against a handful of Defendants.[11] Alexander pleads Section 1983 claims against the Taft Defendants, Henderson County, and the officers.[12]  Alexander pleads state-law medical-negligence claims against the Taft Defendants and SHP.[13]

The Court will organize its opinion by Alexander's causes of action.  In the first part of the Court's opinion, the Court will analyze Alexander's Section 1983 claims. In the second part of the opinion, the Court will analyze Alexander's state-law

---

[7] *Id.*

[8] *Id.*

[9] *Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dep't*, 479 F.3d 377, 379 (5th Cir. 2007).

[10] *Ramming v. U.S.*, 281 F.3d 158, 161–62 (5th Cir. 2001) (cleaned up).

[11] Doc. 114.

[12] *Id.* at 45–49.

[13] *Id.* at 49–52.

4

medical-negligence claims.  In both sections, the Court will tackle Alexander's claims together and need not separate Alexander's claims as applied to each Defendant.

### A. Section 1983 claims

"The constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment."[14] "These rights include the right to medical care and the right to protection from known suicidal tendencies."[15]  "A municipality may be liable under 42 U.S.C. § 1983 for the violation of these rights."[16]  "When attributing violations of pretrial detainees rights to municipalities, the cause of those violations is characterized either as a condition of confinement or as an episodic act or omission."[17]  Conditions-of-confinement cases attack the "general conditions, practices, rules, or restrictions of pretrial confinement."[18]  In episodic-act-or-omission cases, "the complained-of-harm is a particular act or omission of one or more officials" where "an actor usually is interposed between the detainee and the municipality."[19]

Before addressing each Section 1983 claim, the Court must determine if Alexander's Section 1983 claims are premised on a conditions-of-confinement or episodic-act-or-omissions theory, as the framework for each theory is different.[20]  In

---

[14] *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc).

[15] *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019) (cleaned up).

[16] *Id.* (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978)).

[17] *Id.* (cleaned up).

[18] *Hare*, 74 F.3d at 644.

[19] *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc).

[20] *Compare Garza*, 922 F.3d at 633–34 (conditions-of-confinement framework) *with id.* at 634–638 (episodic-act-or-omission framework).

making this determination, the Court determines if the plaintiff's constitutional attack "hinges . . . on general conditions, practices, rules, or restrictions of pretrial confinement" such as "inadequate food, heating, or sanitary conditions themselves [that] constitute miserable conditions," or if the plaintiff's constitutional attack stems from an officer's individual act or omission such as sexual assault.[21]

The Fifth Circuit's en banc opinion in *Scott* highlights this distinction.  In *Scott*, the plaintiff complained of inadequate prison staffing, which resulted in a sexual assault committed by a prison guard against the plaintiff.[22]  The en banc Fifth Circuit held that Scott's claim was an episodic-act-or-omission case because Scott's harm stemmed from the individual guard's specific act of sexual assault, despite the fact that understaffing (a general prison condition) may have contributed to the officer's ability to commit sexual assault.[23]

So too here, Alexander pleads both a condition-of-confinement and an episodic-act-or-omissions theory, *i.e.*, that his constitutional injuries stem from both prison conditions and specific, individual acts of an officer.  Specifically, Alexander pleads that he "was harmed by being subjected to the conditions inherent to the violent cell under the express policies of the jail, such as complete isolation, 24-hour bright lighting, a total lack of bedding, and no access to a toilet, shower, sink, or running water of any kind" and that he was separately harmed by "intentional acts or

---

[21] *Scott*, 114 F.3d at 53.

[22] *Id.* at 53.

[23] *Id.* at 53–54.

omissions" by a handful of officers.[24]  Alexander's harms, which stem from the barren conditions within the violent cell, are best classified as harms relating from his conditions of confinement, so the Court will proceed analyzing his Section 1983 claims under the Fifth Circuit's conditions-of-confinement framework.[25]  This is because Alexander's alleged harms occurred because of a combination of SHP's, the Taft Defendants', and the jail's "express policies"[26] instead of an individual, "specific" act on the part of a prison official such as sexual assault.[27]

To this end, Alexander pleads that the "conditions inherent to the violent cell," including "complete isolation, 24-hour bright lighting, a total lack of bedding, and no access to a toilet, shower, sink, or running water of any kind," violate his rights under the Fourteenth Amendment.[28]  Henderson County moves to dismiss Alexander's conditions-of-confinement claim, arguing (1) that "the Fourteenth Amendment requires jails to protect from known suicidal tendencies" and (2) Henderson County's measures related to the violent cell serve this legitimate interest.[29]  Defendant Taft (individually) argues that Alexander's Section 1983 claim fails because he has not

---

[24] Doc. 114 at 5.

[25] This Court previously dismissed Alexander's claims after applying the episodic-act-or-omissions framework.  *See* Doc. 112.  Pursuant to this Court's order, Alexander was allowed to refile a new complaint.  *Id.*  He did.  Doc. 114.  In his new complaint, Alexander has clarified his theories of harm.  *Id.* at 5 ¶ 6.  After Alexander's clarification, it's clear that this case should proceed exclusively under the conditions-of-confinement framework.

[26] Doc. 114 at 6–44.

[27] *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (identifying a sexual assault case as an episodic act or omission).

[28] Doc. 114 at 5.

[29] Doc. 124 at 24–25.

plausibly alleged that Taft acted with subjective deliberate indifference,[30]  Defendant Taft PLLC argues that Alexander's complaint fails to meet *Monell*'s requirement for pleading a claim against a municipality.[31]  And the officers raise the defense of qualified immunity, which must succeed if there was no constitutional violation.[32]

While Alexander responds to each of these arguments, the most on-point argument for his conditions-of-confinement theory is Henderson County's argument that the violent cell's conditions serve a legitimate interest.[33]  In response to that argument, Alexander argues that the restrictions at the jail "go far beyond what is reasonable or necessary to prevent suicide."[34]  The Court agrees with Henderson County.  As a result, all of Alexander's Section 1983 claims are dismissed on the merits against all Defendants.[35]

"In a case challenging conditions of confinement, 'the proper inquiry is whether those conditions amount to punishment of the detainee.'"[36]  In the Fifth Circuit, a "condition" may be a "rule," a "restriction," "an identifiable intended condition or practice," or "acts or omissions" by staff members that are "sufficiently extended or persuasive."[37]  For a plaintiff to succeed under a conditions-of-confinement theory, he

---

[30] Doc. 123 at 8–9.

[31] *Id.* at 10–13.

[32] Doc. 126 at 20–26.

[33] Doc. 124 at 24–25.

[34] Doc. 128 at 21–25.

[35] The Officers argue that they are entitled to qualified immunity.  Doc. 125.  To this end, the Officers' brief focuses on qualified immunity's clearly-established prong.  *Id.* at 20.  But we'll get to qualified immunity later.

[36] *Garza*, 922 F.3d at 632 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

[37] *Est. of Henson v. Wichita Cnty.*, 795 F.3d 456, 468 (5th Cir. 2015).

must prove that "the condition must be one that is 'arbitrary or purposeless' or, put differently, 'not reasonably related to a legitimate goal.'"[38]  A plaintiff must also prove that the condition constitutes "a serious deficienc[y] in providing for his basic human needs" because "any lesser showing cannot prove punishment in violation of the detainee's Due Process rights."[39]  Moreover, these conditions "must cause" the constitutional deprivation.[40]  As an example, "[p]rior conditions cases have concerned durable restraints or impositions on inmates' lives like overcrowding, deprivation of phone or mail privileges, the use of disciplinary segregation, or excessive heat."[41]  In short, in a conditions-of-confinement case, a prisoner must establish three things: (1) a harm in the form of  "a serious deficienc[y] in providing for his basic human needs,"[42] (2) an improper fit in showing that the harm is "not reasonably related to a legitimate goal,"[43] and (3) cause.[44]

Here, the Court will begin with "fit," or rather, Alexander's argument that the violent cell's conditions are "not reasonably related to a legitimate goal."  For starters, prisons have a constitutional duty to protect their prisoners against their own "known suicidal impulses."[45]  Because of this constitutionally compelled command, typical

---

[38] *Shepherd*, 591 F.3d at  (quoting *Bell*, 441 U.S. at 539).

[39] *Id.* at 454.

[40] *Garza*, 922 F.3d at 633.

[41] *Id.* at 633–64.

[42] *Shepherd*, 591 F.3d at 454.

[43] *Bell*, 441 U.S. at 539; *see also Scott*, 114 F.3d at 53.

[44] *See e.g.*, *Shepherd*, 591 F.3d at 454.

[45] *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 391 (5th Cir. 1992)

jail-suicide cases involve Section 1983 claims brought by the estate of a self-slain prisoner who argues that the state violated its constitutionally mandated duty to protect its prisoners against their own known suicidal impulses. Or rather, the estate argues that a jail's suicide-prevention cells, or conditions of confinement, should be stricter to prevent a jail suicide. Take, for example, the facts in *Estate of Bonilla by & through Bonilla v. Orange County, Texas*.[46] There, a pretrial detainee committed suicide while in custody.[47] Her estate brought suit arguing that the jail had an *inadequate* policy for screening potentially self-harm individuals, had inadequate medical care, had inadequate monitoring procedures, and inadequate suicide-prevention cells (*i.e.*, "failure to provide suicide prevention bedding").[48] That's the norm.

This case is quite different from the norm. And this difference highlights why Henderson County's policies regarding conditions in the violent cell are reasonably related to its legitimate goal in preventing suicides. Alexander directly implicated Henderson County's constitutional mandate that it protect Alexander from killing himself when Alexander verbally outcried that he was suicidal.[49] Per his own complaint, he did this *for the sole purpose of* getting put into a suicide-prevention cell:

> Alexander was transferred to a group pod where his new podmates repeatedly threatened him. Alexander asked the guards to move him out of that pod several times, but they refused to do so. Fearing for his life,

---

[46] 982 F.3d 298 (5th Cir. 2020).

[47] *Id.* at 302–304.

[48] *Id.* at 305.

[49] Doc. 114 at 19 (pleading that his confinement to the violent cell occurred five hours after "he told the guards he was suicidal").

> Alexander believed the only way to protect himself was to tell the guards that he was suicidal.[50]

Well, the prison officials answered his constitutionally protected call.  Per his request, they removed Alexander from the general population and confined him to a suicide-prevention cell for five days.[51]  It worked.  Alexander lived.

And Alexander now sues arguing that the denial of a toilet, sink, blanket, sheet, and ability to turn off the lights is arbitrary, purposeless, or not reasonably related to the state's interest in keeping him alive.  Or in layman's terms, Alexander wanted a toilet, sink, blanket, sheet, and the lights off during his stay in a suicide-prevention cell.   But Alexander's requests are not only unreasonable, they're potentially unlawful, as Alexander's requests may prevent Henderson County from its constitutional duty to protect suicidal inmates from themselves.  If Henderson County gives a toilet to a suicidal inmate so he wouldn't have to urinate through a drain in the floor, he may attempt to drown himself in the toilet.[52]  If Henderson County gives a sink to a suicidal inmate, he may attempt to drown himself in the sink.[53]  If Henderson County gives a blanket to a suicidal inmate, he may hang himself by blanket.[54]  If Henderson County gives a bedsheet to a suicidal inmate, he

---

[50] *Id.* at 3.

[51] *Id.*

[52] *Belcher v. City of Foley*, 30 F.3d 1390, 1393 (11th Cir. 1994) (inmate attempted to drown himself in the cell's toilet).

[53] *Crocco v. Van Winkler*, No. 1:19-CV-882, 2023 WL 2349593, *at 2 (D. N.H. Mar. 3, 2023) (inmate attempted to drown himself in the cell's sink).

[54] *Flores v. Cnty. of Hardeman*, 124 F.3d 736, 737 (5th Cir. 1997) (inmate hanged himself in cell by tying blanket to shower rod).

11

may hang himself by bedsheet.[55]   And if Henderson County turns off the lights in a suicide-prevention cell, it may give a temporarily troubled suicidal inmate the opportunity to make any one of the permanent decisions listed above.[56]   So even if it could be argued that any of these conditions, such as the denial of a toilet, constitutes a deprivation of life's necessities, such a deprivation is reasonably tailored to the state's legitimate interest in protecting suicidal inmates from themselves.   And Alexander will sleep soundly at night too as a result of the violent cell's constitutionally mandated suicide-prevention measures.   The Court holds that the conditions at the violent cell are not "'arbitrary or purposeless' or, put differently, 'not reasonably related to a legitimate goal.'"[57]   As a result of the violent cell being reasonably tailored to the state's interest in preventing suicides, the Court holds that Henderson County has not committed a constitutional violation.   For this reason, qualified immunity likewise shields the officers from suit.[58]

Setting fit aside, Alexander cannot pass the first element of his conditions-of-confinement claim—that the conditions of Henderson County's suicide-prevention cell deprives him of life's necessities.   In the Southern District of Georgia, in *Chapman v. Proctor*, a plaintiff brought claims under a conditions-of-confinement theory arising from his placement in a suicide-prevention cell for 16 days.[59]   There, like here, the

---

[55] *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 391 (5th Cir. 2000) (inmate used sheet to kill herself).

[56] *Taylor v. Wausau Underwriters Ins. Co.*, 423 F.Supp.2d 882, 886 (E.D. Wis. 2006).

[57] *Shepherd*, 591 F.3d at 454.

[58] *See* Doc. 125 at 20–26 (raising qualified immunity).

[59] *Chapman v. Proctor*, No. 2:20-CV-0091, 2022 WL 822466, at *1 (S.D. Ga. Jan. 10, 2022), *report and recommendation adopted,* 2022 WL 501390 (S.D. Ga. Feb. 18, 2022).

cell lacked a bed, toilet, sink, clothing, or adequate heating.[60]  Moreover, like here, plaintiff was denied toiletries, not able to wash his hands or clean himself, not provided with utensils, and denied a hernia strap.[61]  The magistrate judge held that the conditions in the suicide-prevention cell "fail[ed] to demonstrate any deprivation of the minimal civilized measure of life's necessities," and recommended dismissal of the plaintiff's Fourteenth Amendment conditions-of-confinement claims.[62]  The Southern District of Georgia agreed with that recommendation.  While that ruling isn't binding, its logic is persuasive.

Alexander pleads that his denial of a toilet constitutes a constitutional violation.[63]  The Eleventh Circuit disagrees.[64]  Alexander also pleads that the denial of toilet paper, a bed, a shower, or running water constitutes a constitutional violation.[65]  The Eleventh Circuit disagrees.[66]  And Alexander pleads that the denial of his ability to "brush his teeth, wash his hands, or bathe, despite multiple requests to take a shower and generally clean himself up" constitutes a constitutional

---

[60] *Id.* at 2.

[61] *Id.*

[62] *Id.* at 7.

[63] Doc. 114 at 9.

[64] *Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) (affirming dismissal of Eighth Amendment claim based on confinement in *general population* cell for eighteen days without properly functioning toilet).

[65] Doc. 114 at 9.

[66] *Anderson v. Chapman*, No. 3:12-CV-0088, 2013 WL 4495827 (M.D. Ga. 2013) (granting defendants' summary judgment motion where prisoner alleged placement on suicide watch for five days with no access to clothing, mattress, blanket, toilet paper, water or showers, and forced sleeping on floor with dried urine, blood, and feces), *aff'd*, 604 F. App'x 810, 814 (11th Cir. 2015).

violation.[67]   The Middle District of Alabama disagrees.[68]   Sure, while the Court has cited out-of-circuit cases in reaching its opinion, notably, each court to consider the issue asks the same or similar question the Fifth Circuit asks: whether the conditions demonstrate "serious deficiencies in providing for [the detainee's] basic human needs."[69]   So while not binding, this case law is persuasive.

Alexander's best shot at showing that the violent cell deprived him of life's basic necessities comes from a recent Fifth Circuit case: *Taylor*.[70]   But the suicide-prevention cell in *Taylor* was far worse.   As a backdrop, the Fifth Circuit remarked that *Taylor* contained "extraordinary facts."[71]   Against that backdrop, in *Taylor*, an inmate brought a Section 1983 claim challenging his conditions of confinement during his six-day stay in two unconstitutionally filthy cells.[72]   *Taylor*'s first cell, which was a general-population cell, "was covered with massive amounts of feces that emitted a strong fecal odor."[73]   He was forced to sleep naked in the cell.[74]   He couldn't eat because he risked contamination.[75]   He couldn't drink because "feces were packed

---

[67] Doc. 114 at 10.

[68] *Radford v. Thomas*, No. 2:13-CV-0188, 2016 WL 3919483 (M.D. Ala. Mar. 1, 2016) (holding that inadequate restroom facilities, lack of access to a restroom and water while on the yard, and denial of sufficient hygiene items does not establish a conditions-of-confinement claim for *general population* inmates), *report and recommendation adopted,* 2016 WL 3912039 (M.D. Ala. July 19, 2016).

[69] *Compare Shepherd*, 591 F.3d at 454 *with Chapman*, 2022 WL 822466, at *7 ("Plaintiff's allegations fail to demonstrate any deprivation of the minimal civilized measure of life's necessities.").

[70] *Taylor v. Stevens*, 946 F.3d 211 (5th Cir. 2019), *overruled on other grounds Taylor v. Riojas*, 592 U.S. 7 (2020).

[71] *Id.* at 220 n.11.

[72] *Id.* at 216.

[73] *Id.* at 218.

[74] *Id.*

[75] *Id.*

14

inside the water faucet."[76]  Four days later, officers moved Taylor to a different cell—a "seclusion" cell that was still wrought with fecal matter.[77]

On deprivation of life's necessities, this case is far from *Taylor*.  The main thrust of the constitutional deprivation in *Taylor* was the obscene amounts of fecal matter, which contaminated Taylor's food and water.[78]  More specifically, while the Fifth Circuit observed that "[a] dirty cell does not automatically violate the Constitution,"[79] the levels of filth in Taylor's case presented a genuine dispute of material fact on whether Taylor was denied "the minimal civilized measure of life's necessities."[80]  This case is different because the thrust of Alexander's plea is not about a filthy, fecal-matter-laden cell.  Instead, Alexander (a self-announced suicidal inmate) pleads that the denial of bedding, clothing, toilet, and a sink in a suicide-prevention are deprivations of life's necessities, not a lack of cleanliness or *Taylor*-levels of filth.[81]  To the contrary, Alexander provided the following picture in his third amended complaint, which does not show anything close to the level of filth in *Taylor*.

---

[76] *Id.*

[77] *Id.* at 219.

[78] *Id.* at 218–19.

[79] *Id.* at 220.

[80] *Id.* at 221.

[81] Doc. 114 at 3–4.



**Blanket**   **Urination/Defecation Drain Grate**   **Concrete Sleeping Slab**

*See* Doc. 114 at 4 (red arrows and labels in original). Although this case is at the motion-to-dismiss stage, to the extent Alexander's third amended complaint makes any reference in passing that the level of filth in Alexander's cell rivals anything close to the level of filth in *Taylor*, both the Supreme Court and the Fifth Circuit require courts to disregard facts contradicted by pictures or videos, even at the pleading stage.[82] Thus the Court holds that the violent cell's conditions did not deprive Alexander of life's minimal necessities.[83]

---

[82] *Kokesh v. Curlee*, 14 F.4th 382, 385 n.2 (5th Cir. 2021) (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)). To the extent a video differs from a photo in its ability to negate contradictory facts, "when an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls." *Smit v. SXSW Holdings, Inc.*, 903 F.3d 522, 528 (5th Cir. 2018) (cleaned up). Here, the complaint never makes allegations of filth like were at issue in *Taylor*, and the photo in the complaint is consistent with the pleading.

[83] One last thing about *Taylor* before the Court wraps up its Section 1983 analysis. The *Taylor* Court never directly considered whether the filthy conditions in Taylor's cell were reasonably related to a legitimate purpose. *See Taylor*, 946 F.3d at 218–220. This is probably because it's obvious that

And for the same reason, lack of a constitutional violation, Alexander's Section 1983 claims against the Taft Defendants fail.  A plaintiff may challenge medical treatment he received at a jail as one of his conditions of confinement.[84]  Here, Alexander does just that.  Alexander's Section 1983 claims against the Taft Defendants arise from Taft's involvement with Henderson County in making the "jail's express policies regarding suicide," specifically the medical care Taft received while in the violent cell (including the Taft Defendants' decision not to remove Alexander from the violent cell for five days after his suicidal outcry).[85]  Generally, "administrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest."[86]  As it relates beyond administrative segregation, a plaintiff's eight-day stay in solitary confinement "do[es] not give rise to a constitutional claim."[87]  And as it relates specifically to one's placement in a

---

there can be no reasonable purpose for a cell that filthy.  But the Fifth Circuit did mention that there could be "any number of perfectly valid reasons" for having an inmate sleep naked on the floor:

> We do not suggest [] that prison officials cannot require inmates to sleep naked on the floor.  There can be any number of perfectly valid reasons for doing so.  Our holding is limited to the extraordinary facts of this case, in which Taylor alleges that the floor on which he slept naked was covered in his and others' human excrement.

*Id.* at 220 n.11.  So for purposes of this case, having Alexander sleep naked on the floor in a *suicide-prevention cell* for the purpose of preventing him from committing suicide almost certainly falls under one of the Fifth Circuit's "any number of perfectly valid reasons" for making him do so.

[84] *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) ("[T]he medical care a prisoner receives is just as much a 'condition' of his confinement as the food he is fed, the clothes he is issued, the temperature he is subjected to in his cell, and the protection he is afforded against other inmates.").

[85] Doc. 114 at 46 ¶ 209.

[86] *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995); *see also Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.").

[87] *Dehghani v. Vogelgesang*, 229 F. App'x 282, 284 (5th Cir. 2007) (citing *Sandin v. Conner,* 515 U.S. 472, 486 (1995)).

suicide-prevention cell, "[t]here is no constitutional right to avoid being placed on suicide watch,"[88] yet alone for only five days after a suicidal call.  Therefore, the Court dismisses Alexander's Section 1983 claims against the Taft Defendants because no constitutional violation has occurred.

The Court **DISMISSES WITH PREJUDICE** Alexander's Section 1983 claims against the Taft Defendants, Henderson County, and the Officers.

### B. State-Law, Medical-Negligence Claims.

Alexander pleads a state-law, medical-negligence claim against the Taft Defendants and SHP.  Together, these Defendants argue that Alexander's medical-negligence claim should be dismissed for failure to plead any of the required elements: duty, breach, cause, harm.[89]  Alexander responds to each of these substantively.  But the Court won't get to Alexander's substantive arguments.

"[A] federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise."[90]  "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."[91]  To make this determination, federal law imposes a four-factor test:

(1) the claim raises a novel or complex issue of State law,

---

[88] *Johnson v. McVea*, No. CV 2:15-1586, 2016 WL 1242840, at *6 (E.D. La. Mar. 7, 2016) (Wilkinson, M.J.) (collecting cases), *report and recommendation adopted*, No. 2:15-CV-1586, 2016 WL 1223067 (E.D. La. Mar. 29, 2016).

[89] Doc. 122 at 9–14 (SHP's motion to dismiss); Doc. 123 at 13–15 (Taft Defendants' motion to dismiss).

[90] *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(a), (c)).

[91] *Id.*

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.[92]

Here, these four factors weigh in favor of declining supplemental jurisdiction. First, Alexander's medical-negligence claim presents a novel or complex issue of Texas law. As stated in the Court's analysis of Alexander's Section 1983 claims, the facts of this case are unique. The claims arising in this case stem from Henderson County's effective suicide-prevention measures whereas facts in virtually every other conditions case arises from a jail's *in*effective suicide-prevention measures.

Furthermore, the procedural posture of this case also presents a novel or complex issue of state law. Alexander brings his medical-negligence claims under Chapter 74 of the Texas Civil Practice and Remedies Code.[93] Under Section 74.351 of this code, "plaintiffs in health care liability cases" must "serve an expert report within 120 days after filing of a defendant's original answer" or else plaintiff's claim is dismissed with prejudice.[94] The Supreme Court of Texas has opined that the expert report requirement serves two functions: it (1) "inform[s] the defendant of the specific conduct the plaintiff has called into question" and it (2) "provide[s] a basis for the trial court to conclude that the claims have merit."[95] In other words, health care liability

---

[92] 28 U.S.C. § 1367(c).

[93] TEX. CIV. PRAC. & REM. CODE §§ 74.001 *et seq.*

[94] *Passmore v. Baylor Health Care Sys.*, 823 F.3d 292, 293 (5th Cir. 2016) (discussing § 74.351).

[95] *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013).

cases brought in Texas courts never have motions to dismiss because either (1) the plaintiff has timely served an expert report (which contains evidence more than sufficient enough to survive a motion to dismiss) or (2) the plaintiff has not timely served an expert report (which means the claim is procedurally dismissed by statute).

Here's the catch, or rather, here's why this case's procedural posture presents a novel or complex issue of state law: "a federal court entertaining state law claims may not apply section 74.351,"[96] *i.e.,* Texas's expert report requirement in medical-negligence claims doesn't apply.  So this Court is in a unique procedural posture, deciding a motion to dismiss in a medical-negligence case under Texas law.

And this unique procedural posture presents problems for the Court.  For instance, while it's clear that "expert testimony is required to establish the standard of care" at the summary-judgment stage,[97] neither party has presented the Court with a case describing the appropriate standard of care at the motion-to-dismiss stage.  Because of the expert report requirement, such a case likely doesn't exist.  For this reason, the Court will decline to make a first-impression issue of a matter under Texas statutory law when the dismissal of Alexander's federal claims makes deciding the Texas issue wholly discretionary.

As to the third and fourth supplemental-jurisdiction factors, the Court has already dismissed all claims brought under its original jurisdiction, and the above-

---

[96] *Passmore*, 823 F.3d at 299.

[97] *Nichols v. United States*, No. 21-50368, 2022 WL 989467, at *4 (5th Cir. Apr. 1, 2022).

described procedural posture of this case warrants an additional "compelling" reason denying retaining supplemental jurisdiction over Alexander's state-law claims.

Accordingly, the Court declines to exercise supplemental jurisdiction over Alexander's state-law claims against the Taft Defendants and SHP.[98]

## IV. Conclusion

The Court **GRANTS IN PART AND DENIES IN PART** Defendants' motions and **DISMISSES** all claims in this action.  Plaintiff Ronnie Alexander's Section 1983 claims against the Taft Defendants, Henderson County, and the Officers are **DISMISSED WITH PREJUDICE** for failure to state a claim, and Alexander's state-law, medical-negligence claims against the Taft Defendants and SHP are **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.  This is a final judgment dismissing all parties and claims.  The Clerk of the Court is **INSTRUCTED** to close this case.

**IT IS SO ORDERED** this 28th day of June, 2024.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[98] *Bogus v. Harris Cnty. Dist. Att'y*, 830 F. App'x 746, 748 (5th Cir. 2020) ("In addition, the district court did not abuse its wide discretion by declining to exercise supplemental jurisdiction over any remaining state law claims."); *Heggemeier v. Caldwell Cnty.*, 826 F.3d 861, 872 (5th Cir. 2016) ("And based on these factors, we have elucidated *the general rule that a court should decline* to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." (emphasis added) (cleaned up)).